NOT FOR PUBLICATION                                                         (Doc. No. 23)

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
CAMDEN VICINAGE

_____
                                                         :
SANDRA GEISS and ROBERT GEISS,   :
h/w,                                                     :
                                                         :
                 Plaintiffs,                     :        Civil No.  09-2208 (RBK/KMW)
                                                         :
         v.                                           :        **OPINION**
                                                         :
TARGET CORPORATION, and/or    :
TARGET CORPORATION OF           :
MINNESOTA, JOHN DOES 1-5          :
(fictitious persons), and ABC CORPS 1-5 :
(fictitious corporations),                   :
                                                         :
                 Defendants.                  :
_____ :
                                                         :
TARGET CORPORATION,              :
                                                         :
                 Third-Party Plaintiff,      :
                                                         :
         v.                                           :
                                                         :
VIRTUA MEMORIAL HOSPITAL,    :
VIRTUA MEMORIAL HOSPITAL-    :
MT. HOLLY, VIRTUA WEST,           :
JOHN DOES 1-10 (names unknown), and :
ABC CORPS. 1-10 (names unknown),  :
                                                         :
                 Third-Party Defendants.  :
_____ :

**KUGLER**, United States District Judge:

   This matter arises out of a slip-and-fall case by Plaintiffs against Defendant/Third Party

Plaintiff Target Corp. ("Target").  Subsequent to her fall, Mrs. Geiss was hospitalized at Third-

Party Defendant Virtua Memorial Hospital ("Virtua").  Target filed a Third-Party Complaint

1

seeking contribution and indemnification from Virtua for Plaintiff's injuries.  Before the Court is Virtua's Motion to Dismiss Target's Third-Party Complaint.  Virtua argues that Target's Third-Party Complaint should be dismissed because Target did not file an Affidavit of Merit ("AOM") as required by New Jersey's Affidavit of Merit Statute ("AMS").  Because Target complied with a statutory exception by filing a sworn statement in lieu of an AOM, Virtua's Motion is **DENIED**.

I.    BACKGROUND

In January 2006, Mrs. Geiss had her right knee replaced and a prosthesis inserted.  (Third-Party Compl. Count I ¶ 3).  In July 2007, Mrs. Geiss slipped and fell in Target.  (Third-Party Compl. Count I ¶ 2).  According to Target, at some time in August 2007, Mrs. Geiss had her knee examined, and doctors determined that the prosthesis was in place and unharmed.  (Third-Party Compl. Count I ¶ 4).  Then, on August 29, 2007, Plaintiff had trouble breathing and was admitted to Virtua with sepsis and a bacterial infection.  (Third-Party Compl. Count I ¶ 5).  Mrs. Geiss underwent surgery to replace the prosthesis in her knee.  She developed a MSSA infection, underwent several subsequent surgeries, and ultimately had her knee fused.  (Third-Party Compl. Count I ¶ 9).  Mrs. Geiss remained at Virtua for two months.  (Third-Party Compl. Count I ¶ 5).  On March 26, 2009, Plaintiffs brought suit against Target, alleging that Mrs. Geiss's fall at Target caused her injuries and hospitalization.

On July 29, 2010, Target filed a Third-Party Complaint against Virtua, alleging that Mrs. Geiss's injuries were not caused by her fall, but by Virtua's negligence.  (Third-Party Compl. Count I ¶ 6-7).  Target's theory of Virtua's negligence can be summarized in a single sentence: "According to Plaintiff's expert, Dr. Barry Gleimer, <u>something</u> occurred during the course of Plaintiff's [Mrs. Geiss] admission to Virtua Memorial Hospital-Mt. Holly which dislodged

and/or damaged the prosthesis." (Third-Party Compl. Count I ¶ 8) (emphasis added). The Third-Party Complaint contains no further explanation of exactly how Plaintiff was injured, or how Virtua was negligent. However, before filing its Third-Party Complaint, Target requested copies of Mrs. Geiss's hospital records from her time at Virtua. (Third-Party Compl. Count II ¶ 2). Virtua informed Target that "a significant portion" of the records were missing. (Third-Party Compl. Count II ¶ 3). Target requested the missing records, but did not receive them. Target therefore requested that Virtua identify the medical personnel who signed portions of the records, and identify the medical personnel who would have signed the missing records. Virtua responded that it could not "identify with any specificity the names of the employees, nurses, doctors, or other individuals or entities who treated and/or participated in the treatment of Plaintiff." (Third-Party Compl. Count III ¶ 3). Thus, Target alleges that it "cannot state with any specificity the exact date upon which Plaintiff was injured at the hospital or the exact cause of Plaintiff's injuries." (Third-Party Compl. Count II ¶ 5).

The Third-Party Complaint contains four counts requesting indemnification or contribution. Count I claims that Virtua and its employees caused Mrs. Geiss's injuries. Count II alleges that Virtua spoliated evidence by "carelessly, negligently and/or intentionally destroy[ing], alter[ing] and/or fail[ing] to maintain the records pertaining" to Mrs. Geiss's visit. Count III claims that Target cannot identify the names of the individual employees who treated Mrs. Geiss, and reserves the right to amend the Third-Party Complaint when Virtua produces the required information. Count IV seeks contribution from Third-Party Defendant under the Joint Tortfeasors Contribution Act, N.J. Stat. Ann. § 2A:53A-1, and under common law.

On September 10, 2010, Virtua answered Target's Third-Party Complaint. Virtua filed its Motion to Dismiss on February 16, 2011 on the basis that Target had not timely filed an AOM

as required by New Jersey's AMS. On February 25, 2011, Target submitted a Sworn Statement pursuant to N.J. Stat. Ann. § 2A:53A-28 certifying that it could not obtain an AOM because Virtua had not provided requested information.

## II. STANDARD

Virtua moved to dismiss after answering the Third-Party Complaint. Where a party moves to dismiss after filing an answer, "the court will treat [the motion to dismiss] as a motion for judgment on the pleadings, pursuant to Fed. R. Civ. P. 12(c)." Snyder v. Baumecker, 708 F. Supp. 1451, 1462 n.6 (D.N.J. 1989). Under Federal Rule of Civil Procedure 12(c), a court will grant judgment on the pleadings if, on the basis of the pleadings, no material issue of fact remains and the movant is entitled to judgment as a matter of law. See Fed. R. Civ. P. 12(c); DiCarlo v. St. Mary Hosp., 530 F.3d 255, 259 (3d Cir. 2008). The standard governing a Rule 12(c) motion is the same as the standard governing a motion to dismiss under Rule 12(b)(6). See Spruill v. Gillis, 372 F.3d 218, 223 n. 2 (3d Cir. 2004). The Court must accept the nonmoving party's well-pleaded factual allegations as true and construe those allegations in the light most favorable to the nonmoving party, but the Court will disregard any unsupported conclusory statements. See DiCarlo, at 262–63. A complaint survives a motion to dismiss if it contains sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). Determining plausibility is a "context-specific task" that requires the court to "draw on its judicial experience and common sense." Ashcroft v. Iqbal, 129 S. Ct. 1937, 1950 (2009). A complaint cannot survive where a court can only infer that a claim is merely possible rather than plausible. See id.

## III. DISCUSSION

The AMS is "a tort reform measure" that is "designed to weed out frivolous lawsuits at

4

an early stage and to allow meritorious cases to go forward." Galik v. Clara Maass Med. Ctr., 771 A.2d 1141, 1147 (N.J. 2001). The AMS "requires a plaintiff in a malpractice case to make a threshold showing that the claims asserted are meritorious" by filing an AOM from an expert stating that the claim is not frivolous.[1] Id. "[T]he AMS applies to the filing of a third-party complaint when the cause of action pled requires proof of malpractice or professional negligence. And, the obligation rests upon the third-party plaintiff to meet the requirements of the statute by filing a timely affidavit of merit." Nagim v. New Jersey Transit, 848 A.2d 61, 68 (N.J. Super. Ct. Law Div. 2003). Where the third-party complaint derives from a malpractice claim asserted by the plaintiff, and "seeks only to direct the claims made by the plaintiff from the only named defendant to the party at fault rather than . . . to raise a new affirmative claim," the third-party plaintiff need not file an AOM. Diocese of Metuchen v. Prisco & Edwards, AIA, 864 A.2d 1168, 1172 (N.J. Super. Ct. App. Div. 2005). In such an instance, the plaintiff is required to file an AOM, thereby fulfilling the purpose of the AMS. Id. However, where the plaintiff does not assert a malpractice claim, the third-party plaintiff asserting malpractice must comply with the AMS. Nagim, 848 A.2d at 68.

There are two exceptions to the AOM requirement. First, there is the common-knowledge exception, where the negligence of the defendant is apparent to an ordinary person,

---

[1] The statute provides:

> In any action for damages for personal injuries, wrongful death or property damage resulting from an alleged act of malpractice or negligence by a licensed person in his profession or occupation, the plaintiff shall, within 60 days following the date of filing of the answer to the complaint by the defendant, provide each defendant with an affidavit of an appropriate licensed person that there exists a reasonable probability that the care, skill or knowledge exercised or exhibited in the treatment, practice or work that is the subject of the complaint, fell outside acceptable professional or occupational standards or treatment practices. The court may grant no more than one additional period, not to exceed 60 days, to file the affidavit pursuant to this section, upon a finding of good cause.

N.J. Stat. Ann. § 2A:53A-27.

rendering an expert opinion unnecessary. Couri v. Gardner, 801 A.2d 1134, 1141 (N.J. 2002). Second, there is the sworn-statement exception, where pursuant to N.J. Stat. Ann. § 2A:53A-28, a plaintiff provides a sworn statement that it requested information necessary to prepare an AOM but has not received that information from the defendant. Id. Here, Target argues that both exceptions apply.[2]

### A. Common Knowledge Exception

An AOM is not required when the case turns on common knowledge, and the allegations sound in ordinary negligence. New Hampshire Ins. Co. v. Diller, 678 F. Supp. 2d 288, 309 (D.N.J. 2009). "The factual predicate for a common knowledge case is one where the carelessness of the defendant is readily apparent to anyone of average intelligence and ordinary experience." Natale v. Camden Cnty. Corr. Facility, 318 F.3d 575, 579 (3d Cir. 2003) (quoting Estate of Chin v. Saint Barnabas Med. Ctr., 734 A.2d 778, 785-6 (N.J. 1999)). The exception applies where there has been an obvious error. See Hubbard v. Reed, 774 A.2d 495, 501 (N.J. 2001) (where dentist extracted wrong tooth); Estate of Chin, 734 A.2d at 787 (where doctor hooked up equipment that pumped gas rather than fluid that should have been used into patient's uterus); Bender v. Walgreen Eastern Co., Inc., 945 A.2d 120 (N.J. Super. Ct. App. Div. 2008) (where pharmacist filled prescription with wrong drug); Becker v. Eisenstodt, 158 A.2d 706, 711 (N.J. Super. Ct. App. Div. 1960) (where doctor used caustic solution rather than painkiller to treat a young girl's nose after plastic surgery). However, "the common-knowledge exception should be narrowly construed 'to avoid non-compliance with the [AMS].'" Risko v. Ciocca, 812 A.2d 1138, 1141 (N.J. Super. Ct. App. Div. 2003) (quoting Hubbard, 774 A.2d at 501). As a

---

[2] Target also argues that the equitable doctrine of "unclean hands" bars Virtua from seeking dismissal on the basis of the AMS. Target relies upon a footnote in McHugh v. Jackson, No. 07-2970, 2009 U.S. Dist. LEXIS 33743 at *19-20 (D.N.J. Apr. 20, 2009), for the proposition that the doctrine is applicable in this situation. Because the Court finds that the "sworn statement" exception is satisfied in this case, it will not determine the applicability of the doctrine of "unclean hands."

result, the plaintiff must "demonstrate that an expert would be no more qualified than a non-expert in regards to attesting to the merit of the claim(s)." Carbonaro v. Lutz, No. 08-4928, 2010 U.S. Dist. LEXIS 80236, at *13 (D.N.J. Aug. 3, 2010) (citing Hubbard, 774 A.2d at 500).

Here, Target has not demonstrated that its claim turns on common knowledge. Target alleges only that "something" happened while Mrs. Geiss was at Virtua that caused her injuries.[3] Target does not allege that an obvious error by Virtua or its employees caused Mrs. Geiss's injuries. Rather, Target acknowledges that it does not know the exact cause of her injuries. Because Mrs. Geiss received medical treatment, her injuries may have resulted from negligent medical care that requires expert testimony to prove. In order to satisfy the common-knowledge exception, Target must demonstrate that Virtua's negligence is readily apparent to anyone of average intelligence and ordinary experience. See Natale, 318 F.3d at 579. Even taking the allegations in the light most favorable to Target, it has not pled facts sufficient for an ordinary person to determine that Virtua was negligent.

### B. Sworn-Statement Exception

The AMS provides a sworn-statement alternative to an AOM. Manley v. Maran, No. 02-2504, 2003 U.S. Dist. LEXIS 19645, at *5 (D.N.J. Aug. 1, 2003). "This alternative applies in cases where a plaintiff has properly requested materials from a defendant that will have bearing on the required Affidavit of Merit, yet the defendant has not complied."[4] Id. The New Jersey

---

[3] Target does not assert res ipsa loquitur as a theory of Virtua's negligence. To assert res ipsa loquitur, Target must plead that: (1) the occurrence itself ordinarily bespeaks negligence; (2) the instrumentality was within Virtua's exclusive control; and (3) there is no indication that the injury was the result of Plaintiff's own voluntary act or negligence. Buckelew v. Grossbard, 435 A.2d 1150, 1159 (N.J. 1981). Moreover, "an affidavit of merit is required in a res ipsa loquitur case, unless the 'common knowledge' doctrine is also applicable." Risko v. Ciocca, 812 A.2d 1138, 1142 (N.J. Super. Ct. App. Div. 2003). Thus, Target's allegations would not be sufficient even if Target relied on res ipsa loquitur because Target has not demonstrated that its claim turns on common knowledge.

[4] The AMS provides the following:

Legislature created the sworn-statement exception as a "safety valve." Aster v. Shoreline Behavioral Health, 788 A.2d 821, 827 (N.J. Super. Ct. App. Div. 2002). It recognized the potential for defendants to abuse the AOM requirement, and "afford[ed] a plaintiff a vehicle to prevent a malpractice defendant from defeating a malpractice claim prematurely by failing to provide the data necessary for an expert to render an Affidavit of Merit." Barreiro v. Morais, 723 A.2d 1244, 1248 (N.J. Super. Ct. App. Div. 1999). Importantly, for the sworn-statement exception to apply, the requested records must have "a substantial bearing on preparation of the affidavit." N.J. Stat. Ann. § 2A:53A-28 (emphasis added). A plaintiff must reasonably believe that the documents exist and that the documents are necessary to prepare the AOM. Guzman v. Jersey City Med. Ctr., 811 A.2d 481, 482 (N.J. Super. Ct. App. Div. 2002) (holding that sworn-statement exception did not apply where plaintiff went to emergency room, but left when he felt he had waited too long and was being ignored, and then requested logs of his visit at the hospital, because plaintiff received no treatment at the hospital and could not reasonably expect logs to exist or that the nonexistent logs would have a substantial bearing on preparation of an AOM). However, "it is difficult to grasp how a plaintiff who has never seen the documents could be specific as to how the unknown documents could have a bearing on the affidavit." Aster, 788 A.2d at 826. Thus, where the information a plaintiff requests is known to exist, "it should be presumed that the medical records or other records or information not produced have . . . a substantial bearing on preparation of the affidavit, and that the burden of establishing otherwise

---

> An affidavit shall not be required pursuant to section 2 of this act if the plaintiff provides a sworn statement in lieu of the affidavit setting forth that: the defendant has failed to provide plaintiff with medical records or other records or information having a substantial bearing on preparation of the affidavit; a written request therefor along with, if necessary, a signed authorization by the plaintiff for release of the medical records or other records or information requested, has been made by certified mail or personal service; and at least 45 days have elapsed since the defendant received the request.

N.J. Stat. Ann. § 2A: 53A-28.

8

should be borne by the party that has not produced the records." Id. (holding that sworn statement exception applied where hospital refused repeated requests for information that it had because there were technical defects with the requests because hospital had not rebutted presumption that information had a substantial bearing on plaintiff preparing AOM); see also Manley, 2003 U.S. Dist. LEXIS 19645, at *9-10 (observing that the AMS does not distinguish between the situation where a defendant in fact has retained the relevant documents or information requested, and where a defendant no longer has that information).

Here, Target timely provided a sworn statement in lieu of an AOM.[5] However, Virtua argues that Target could not reasonably believe that the records sought would have a substantial bearing on the preparation of an AOM. Specifically, Virtua argues that it made good-faith efforts to locate the missing records and informed Target that it could not locate the records before Target filed the Third-Party Complaint. Further, Virtua argues that it provided Target with extensive records of Plaintiff's visit, and that if there had been an incident causing Plaintiff harm, the incident would have been noted somewhere in those records.

Virtua's arguments are unavailing. First, Target reasonably believes that information exists regarding Mrs. Geiss's treatment at Virtua. Target alleges that Virtua has not divulged requested information about the identities of the individuals who treated Mrs. Geiss. Target

---

[5] Virtua does not contest the timeliness of Target's sworn statement. Target provided its sworn statement on February 25, 2011. Virtua filed its answer to the Third-Party Complaint on September 10, 2010. Therefore, Target filed its sworn statement more than 120 days after Virtua filed its answer. See N.J. Stat. § 2A:53A-27 (providing that a plaintiff shall file an AOM within 60 days after the defendant files an answer, or within 120 days if the court finds good cause). However, "for purposes of determining the timeliness of an application to file a 'sworn statement' under N.J.S.A. 2A:53A-28, the application should relate back to the beginning of plaintiff's efforts to obtain the documents referred to in its application." Aster, 788 A.2d at 826 (emphasis added). Thus, a plaintiff's request for information before the statutory deadline satisfies the timeliness requirement. Id. Where a plaintiff's efforts to obtain information "began well before the affidavit of merit filing deadline, because they commenced even prior to suit and commenced thereafter," the sworn statement is timely. Id. In the Third-Party Complaint filed on July 29, 2010, Target alleges that it sought Plaintiff's missing records as well as the names of the personnel who treated Plaintiff. (See Third-Party Compl. Count II ¶ 2). Further, in November 2010, Target again requested the missing records from Virtua. Therefore, Target's sworn statement relates back to an earlier date, and the sworn statement falls within the statutory timeframe.

requested that Virtua identify signatures on the records it received, and asked Virtua to identify the individuals who treated Mrs. Geiss.  Even if the missing records no longer exist or never existed, Target can interview or depose those persons who treated Mrs. Geiss.  Despite Virtua's contention that it has complied in good faith with Target's requests for information, Virtua provides no explanation for its inability to identify those persons.[6]

Second, Target reasonably believes that the information it sought is necessary to prepare an AOM.  See Guzman, 811 A.2d at 482.  Where the information requested exists, that information is presumed to have a substantial bearing on the preparation of an AOM.  Aster, 788 A.2d at 826.  Virtua has not established that the information Target sought does not have a substantial bearing on the preparation of the AOM.  See id.  With the information, Target can depose the individuals who treated Mrs. Geiss and discover what, if anything, occurred during her treatment.  Thus, Target reasonably believes that the identities of the individuals who treated Mrs. Geiss is necessary to prepare an AOM, and Target's Sworn Statement satisfies N.J. Stat. Ann. § 2A:53A-28.

### IV.   CONCLUSION

For the reasons discussed above, Virtua's Motion to Dismiss is **DENIED**.  An appropriate Order shall enter.


Date:   8/2/2011                                                                      /s/ Robert B. Kugler
                                                                                                 ROBERT B. KUGLER
                                                                                                 United States District Judge

---

[6] Target alleges that it requested billing documents and other information from Virtua in an effort to identify treating medical personnel, but that it did not receive them.  (Pl.'s Sworn Statement ¶ 12).  Virtua does not explain why it has not provided Target with that information.